

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 1 0 2018

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Ex rel. GRYNBERG PRODUCTION<br>CORPORATION,<br><br>    Plaintiff/Relator,<br><br>v.<br><br>KINDER MORGAN CO2 COMPANY, LP<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

CIVIL ACTION NO. _____

3 18 - C V 1775 - K

FILED UNDER SEAL
31 U.S.C. §§ 3729-32
JURY TRIAL DEMANDED

## ORIGINAL COMPLAINT

Grynberg Production Corporation ("Grynberg"), acting as Relator on behalf of the Government of the United States of America ("Government"), files this Original Complaint against Defendant Kinder Morgan CO2 Company, LP.

## INTRODUCTION

1.      This case involves the failure of Defendant Kinder Morgan CO2 Company, LP ("Kinder Morgan") to properly identify, disclose, and price the Helium component of the CO2 produced from two production areas known as the McElmo Dome Leadville Unit ("McElmo Dome") and the Doe Canyon leases ("Doe Canyon") in Montezuma and Dolores Counties, Colorado. Helium is a gas that is frequently found as a component of the natural gases that exist in formations on federal lands. It is rare and highly valuable in that it is a non-renewable resource with extraordinary strategic and economic

importance for both private and public purposes.  The majority of the world's Helium was historically contained in the national Helium reserve near Amarillo, Texas, which has been depleted by Helium sales required to pay the federal debt associated with establishing the reserve.  It is estimated that within two years, 40% of the country's Helium reserves will be exhausted, thereby significantly increasing its market value and its price.

2.      Due to its historical strategic importance to the United States Government, leases that allow the extraction and sale of natural gases from federal lands expressly exclude the right to extract Helium.  That right is reserved exclusively to the United States, 30 U.S.C. §181, 43 C.F.R. §3100.1 ("The Helium Act").  Helium may be extracted from a federal leasehold and sold only pursuant to separation agreement(s) negotiated on an individual basis with the United States, 50 U.S.C. §167a, 43 C.F.R. §§ 16.1 *et seq.*

3.      Helium is a separate component of the CO2 produced at the McElmo Dome and Doe Canyon fields. Air Products began separating Helium produced by Kinder Morgan pursuant to agreement with the Government at Doe Canyon which was executed in 2013 and became operational in 2015.  Upon information and belief, the Air Products internal target price to purchase Doe Canyon Helium ranged from $35 - $45 per MCF. However, from 2008 – 2013 at Doe Canyon and from 2008 to present at McElmo Dome, no separation agreement(s) existed with respect to the Helium produced by Kinder Morgan.  The United States owns the Helium, and Kinder Morgan has been selling and continues to sell Helium which it does not own and has no right to sell.  Nonetheless,

Kinder produced the Helium concurrently with the $CO_2$ taken from those units. Kinder Morgan is clearly producing Helium and falsely reporting it as $CO_2$.

4.     The Helium component within the $CO_2$ is being sold but the Government is not being compensated for that Helium. Specifically, Helium is being sold from the leases where no separation agreement exists, and for the price per MCF of $CO_2$ rather than inclusive of the price of Helium. The price of $CO_2$ since 2008 has ranged from $1.20 - 1.70 per MCF. The price of contaminated Helium has ranged from a low of $35 per MCF to a high based on recent auction pricing in excess of $100 per MCF.

5.     The dissipation or venting of Helium within the $CO_2$ stream constitutes a substantial loss of a limited supply of a strategic element. Many key technologies are dependent on an adequate Helium supply, including medical MRIs; post-911 airport security neutron detectors; CERN (the single biggest user of Helium in the world); future fusion power plants which would greatly assist undeveloped regions; optical fiber and computer chip manufacturing; space and satellite tech; down-hole oil and gas instrumentation; future aircraft technologies; and critical scientific research.

6.     World Helium extraction is largely associated with natural gas, but $CO_2$ contains no BTUs apart from its utilization in secondary and tertiary enhanced oil recovery. Due to the significant volume of the $CO_2$ produced in abundance at McElmo and Doe Canyon, the normal practice of simply selling the Helium within the $CO_2$ stream constitutes a loss of a significant volume of Helium for which the Government has not been compensated.

## PARTIES

7.     Relator, Grynberg Production Corporation ("Relator"), is owned by Jack J. Grynberg ("Grynberg"), a citizen of the United States of America with offices in Denver, Colorado.   The Relator conducts business at 3600 South Yosemite Street, Suite 900, Denver, Colorado 80237-1830. Grynberg has been engaged in the business of exploring for and producing natural gas for more than 50 years.  As part of that business, Grynberg has over 40 years of experience and expertise in exploring for and producing $CO_2$ natural gas and associated liquids and minerals, including $CO_2$ natural gas situated on federal, state and fee owned properties.

8.     Defendant Kinder Morgan is a Texas limited partnership with its principal place of business located at 1001 Louisiana St., Suite 1000, Houston, Texas 77002. Kinder Morgan's agent for service of process is Capital Corporate Services, Inc., 206 E. 9th St., Suite 1300, Austin, Texas  78701.

## JURISDICTION AND VENUE

9.     This action is brought under 31 U.S.C. § 3729, *et seq.*, commonly known as the False Claims Act. Relator brings this action under 31 U.S.C. § 3730(b) to recover for, *inter alia,* "false claims" and "false records or statements" that were made, used, or caused to be made or used by Defendant in violation of 31 U.S.C. § 3729. This Court has subject matter jurisdiction over such claims pursuant to 31 U.S.C. § 3732(a) (False Claim Act), 28 U.S.C. § 1331 (Federal question), and 28 U.S.C. § 1355 (Fine, penalty or forfeiture).  This Court has personal jurisdiction over the Defendant in part because the False Claim Action authorizes nationwide service of process. 31 U.S.C. § 3732(a).

4

10.     Venue is proper in this District under 31 U.S.C. § 3732(a) (False Claims Act), 28 U.S.C. § 1395 (Fine, penalty or forfeiture), and 28 U.S.C. § 1391 (Generally) in that Defendant is subject to this Court's personal jurisdiction with respect to the civil actions stated herein and can be found, transacts business, or performed acts proscribed by the False Claims Act within this District. 31 U.S.C. § 3732(a).

11.     To the extent it may be relevant, Grynberg Production Corporation qualifies as an "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B), because it has obtained the information and data supporting this Qui Tam Action confidentially on behalf of the Grynberg family's royalty interest in the McElmo Dome and Doe Canyon Units. Other crucial data has been obtained through review and analysis of direct, personal mailings of royalty statements of which Mr. Grynberg, as the CEO and President of Relator, had exclusive knowledge and possession.  Mr. Grynberg has knowledge of the Helium unlawfully produced from federal lands that is independent of and materially adds to any public disclosed information about sale of Helium as a component of $CO_2$.  Discovery that the Government has been paid royalties during all relevant times on the basis of $CO_2$ pricing alone, rather than pricing inclusive of the value of its Helium component, or, alternatively, that the Government has not been paid full value for the Helium produced in violation of the Helium Act, forms the basis of this Qui Tam Action.

12.     Where this Complaint refers to Grynberg family interests, particularly the valuation of $CO_2$ and Helium, pricing and royalty computations, it also refers to the Government which receives the remittances based on the same modus operandi.

13.     Mr. Grynberg, as a registered professional engineer in good standing in five (5) states, discovered through independent review of royalty statements, that vast volumes of Helium are routinely certified by this Defendant as CO2 volume.

14.     The Relator voluntarily provided to the Government information learned from that extensive investigation pursuant to 31 U.S.C. §3730(e)(4)(B) via an Initial Voluntary Disclosure Statement filed with the United States Attorney of the Northern District of Texas dated November 2, 2017. A sealed Disclosure Statement has been filed contemporaneously herewith, in compliance with 31 U.S.C. § 3730(b)(2). All conditions precedent to the filing of this claim have been satisfied.

## FACTUAL BACKGROUND

### Background on Ownership, Leasing and Royalties

15.     The Helium Act reserves ownership of Helium to the Government and excludes Helium from lease authority.   30 U.S.C. §181.   Direct compensation is, therefore, owed by Kinder Morgan to the U.S. government for the value of the Helium unlawfully produced and sold from Doe Canyon and McElmo Dome during the relevant time periods.   Upon information and belief, Kinder Morgan production and royalty reports filed with the Government on a monthly basis from 2008 to the present, represented the totality of volume processed with CO2 with an ascribed MCF value. Kinder Morgan, however, never disclosed the fact that Helium was a percentage component of CO2 production; that Helium was being produced in violation of The Helium Act; and never disclosed the volume and value of that Helium production. By so doing, it knowingly and intentionally misrepresented that only CO2 was produced,

thereby covering up violations of the Helium Act.  Kinder Morgan also failed to disclose and value Helium under various CO2 leases, as part of the CO2 volume and price assessment for royalties payable to the Government.

16.     Under various statutes, including the Mineral Lands Leasing Act of 1920, 30 U.S. C. § 181, *et seq.*, the Mineral Leasing Act for Acquired Lands, 30 U.S.C. §§ 351-359, the Right-of-Way Leasing Act of 1930, 30 U.S.C. § 301, *et seq.*, and the Outer Continental Shelf Lands Act of 1953, 43 U.S. C. § 1331, *et seq.* (as those Acts have been amended over time), the United States is authorized to lease federally-owned properties for mineral exploration, development and production.  As noted above, those leases exclude the right to extract Helium.

17.     For at least the past four decades, Defendant and its predecessors-in-interest have performed under the terms of certain leases signed by Defendant or its predecessor-in-interest to produce underground minerals from the McElmo Dome and Doe Canyon, among others.  The leased property is owned by the United States. The McElmo Dome, and Doe Canyon fields contain large quantities of CO2 natural gas which Defendant produces, gathers, processes, transports, and then sells to a small group of companies, their affiliate(s) and/or others for use in enhanced oil recovery ("EOR") operations in the Permian Basin area in western Texas and elsewhere.

18.     Under the terms of those federal leases, Defendant is, and/or has been under continuing obligation to pay a royalty to the United States equal to (not less than)12.5% of the value of any minerals produced from the leased acreage, including CO2, condensate, oil, and methane. 30 U.S.C. § 226(b)(1)(A); 30 C.F.R. § 1202.150(a).  Under

federal leases, the volume of $CO_2$ natural gas is measured and reported in units of one thousand cubic feet or MCF.  30 C.F.R § 1202.152(a)(ii).  For purposes of royalty, the value of the $CO_2$ natural gas is calculated by multiplying the volume of the $CO_2$ in MCFs by the dollar value of the $CO_2$ per MCF.  The dollar value per MCF must be computed consistently with 30 C.F.R. §1206.153 (valuation standards for processed natural gas from a federal leases).

19.     Pursuant to federal law and regulations, royalties must be calculated accurately.  By way of example, the Federal Oil and Gas Royalty Management Act ("FOGRMA") requires the Secretary of the Interior "to provide the capability to accurately determine oil and natural gas royalties,"30 U.S.C. § 1711(a); and imposes penalties on "[a]ny person who ... (1) knowingly or willfully prepares, maintains, or submits false, inaccurate or misleading reports ...." *Id.* § 1719(d).  Federal regulations adopted pursuant to FOGRMA and other legislation require reporting of the correct value of natural gas produced from federally owned property. *E.g.*, 30 C.F.R. §§1206.152-1206.153.

20.     The Department of the Interior has administrative responsibilities over the Defendant's performance, which includes occasional inspections of the Defendant's McElmo Dome and Doe Canyon federal lease properties.  But in practical terms, the Government depends on Defendant to perform its obligations honestly, and to accurately report the volume of cases it produces, gathers, processes, transports, and then sells.

8

**CO2 Produced from McElmo Dome and Doe Canyon is Used Primarily for
Enhanced Oil Recovery Operations in the Permian Basin Oil Fields in West Texas.
The CO2 Produced by Kinder Morgan Contains a Mixture of Gases, Including
Helium, but the Volume and Value of the Helium Was Not Differentiated, Reported,
or Otherwise Included in the CO2 Volumetric Valuation.**

21.     Almost all of the CO2 natural gas produced by the Defendant from
McElmo Dome and Doe Canyon is gathered, processed, transported, and then sold to
itself and/or its affiliate(s) and/or others in a small, noncompetitive market, an oligopoly
for use in EOR operations in the Permian Basin area.  The CO2 natural gas is transported
from the above described fields via a pipeline that is partly or wholly owned by the
Defendant and/or its affiliate(s).

22.     The Leadville Formation in Colorado's Montezuma and adjacent counties
is among the world's largest CO2 sources, and largest in the United States. The McElmo
Dome and Doe Canyon units in Montezuma County account for practically all of this
CO2, estimated to be 15 trillion cubic feet (TCF) of recoverable CO2.  Roughly 6 TCF
has been produced since the 1999.  Upon information and belief, Kinder Morgan has
failed to conduct field analyses of Helium concentrations as a component of their CO2
production and failed to file gas analyses reports for the CO2 production as required by
the Gas Analysis Resolution and Verification System (GARUS).   43 C.F.R. §§
3175.10(b), 3175.120, and 3176.165.  Upon information and belief, the last testing of
Helium concentrations was conducted by the Government in 1990. Based upon that
testing, the percentage concentration of Helium in the CO2 stream from the McElmo
production approximated .1% (1/10 of 1%).  The percentage concentration of Helium in
the CO2 stream production for Doe Canyon approximated four times greater, at .4%

(4/10 of 1%). From 2008-2013, Helium was not separately identified and valued at Doe Canyon, but was identified, reported and sold only as $CO_2$ volume. A separation agreement was negotiated beginning in 2013 for Helium concentrations in excess of .3%, but did not include Helium concentrations less than .3%. The Helium produced from McElmo Dome from 2008 to date has never been separately identified and valued, but sold only as $CO_2$.

23.     Had Kinder Morgan proceeded to test for and report the component Helium concentrations within the $CO_2$ produced, the amount of $CO_2$, as reported on its federal filings, should have decreased by the percentage Helium concentration multiplied by the total volume. Alternatively, the MCF $CO_2$ values should have increased by inclusion of the Helium component value. By reporting the entirety of the production volume as $CO_2$, Kinder Morgan knowingly and intentionally misrepresented the volume and value of $CO_2$ and Helium produced.

24.     The claims asserted herein are based upon Relator's independent discovery and analysis of the inclusion of significant volume of low concentration Helium in the $CO_2$ produced by Kinder Morgan from McElmo Dome and Doe Canyon, and the failure of Kinder Morgan to disclose, differentiate and value the component Helium being produced and reported as $CO_2$. Upon information and belief, the claims asserted are not based upon the public disclosure of allegations or transactions in a federal criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, as set forth in 31 U.S.C. § 3730(e)(4). The discovery of Kinder Morgan's false reporting and failure to

differentiate and value the Helium component was independent of and materially added to any information about $CO_2$ pricing that may have been subject to any prior public disclosure. Defendant's misconduct, as described herein was not known by officials of the Government charged with responsibility to act in the circumstances, nor were those officials reasonably in a position to know about them, until the Relator brought this information to the Government's attention.

25.     Accordingly, Relator qualifies as an "original source", within the meaning of 31 U.S.C. §3730(e)(4), of the information upon which this action is based.  None of the statutory prohibitions to maintaining a suit under the False Claims Act, as set forth in 31 U.S.C. §3730(e), apply here.

**Defendant Knowingly Certified the Total $CO_2$ Volume Produced from McElmo Dome and Doe Canyon Without Disclosure of the Production of Helium or Quantification and Valuation of Its Helium Component.**

26.     Defendant is selling the Government's Helium, which it does not own, at a price significantly less than its market value.  This conduct is in violation of the Helium Act (which provides for exclusive ownership by the Government and excludes Helium from gases subject to lease) and federal regulations which require Defendant to obtain fair market value for all gases taken from leased federal lands, 43 C.F.R. §3162.7 *et seq*.

27.     By paying royalties on the reported sales of $CO_2$ and not separately reporting and paying royalties on the sale of Helium as part of the $CO_2$ volumes, or alternatively, by failing to pay the Government full value for the Helium unlawfully extracted, Defendant's production reports, royalty reports, and other documents and reports submitted to the Government from 2008 to present with respect to the McElmo

11

Dome and Doe Canyon leases and $CO_2$ production, upon information and belief, are knowingly and materially false as both express and implied certifications of compliance with the law and their obligations to the Government, in violation of 31 U.S.C. §3729(a)(1)(A), (B), (D), (E), and (G)).[1]

28.    Defendant has failed to report and pay for the value of Helium produced from Government leases, and, with respect each such failure, has knowingly and materially misstated, concealed, or wrongfully decreased and avoided payment of their legal obligations to the United States.  Defendant's failure to disclose and value the Helium component of the $CO_2$ production, concealed violation(s) of the Helium Act, in addition to minimizing the value of $CO_2$.  Upon information and belief, Kinder Morgan never applied for or received any waiver or approved variance from the Government with respect to said Helium.

29.    The Grynberg family is a partner with the Defendant Kinder Morgan in 14 Doe Canyon Unit leases.  Air Products entered into a separation agreement to extract the Helium from Doe Canyon, but it must report to and pay the Government the prevailing fair market value, which, upon information and belief, at inception was $35 per MCF and is believed to have dramatically escalated since.  Kinder Morgan is not the operator of the Doe Canyon Helium extraction facility, but according to federal regulation, it must pay the royalty owner the fair market price for both Helium sold for processing and Helium

---

[1] The actual Kinder Morgan $CO_2$ production and royalty reports are on file with the BLM and are included in pending FOIA requests.  Upon information and belief, the reports filed by Kinder Morgan parallel the $CO_2$ production and valuation information presented in Kinder Morgan remittance statements to royalty owners.

12

not separated but vented.

30.     The applicable regulations provide that the pricing of $CO_2$ shall be the "reasonable value" determined in accordance with the applicable regulatory methods. Here, the gross proceeds received by the Kinder Morgan from the sale of $CO_2$ from 2008 to present "do not reflect the reasonable value of the … gas … because of misconduct by or between the contracting parties, or because the lessee [i.e., Kinder Morgan] otherwise has breached its duty to the lessor [i.e., the Government] to market the production for the *mutual benefit* of the lessee and the lessor."  30 C.F.R § 1206.153 (c) and (b)(1)(ii) (emphasis added).

31.     Kinder Morgan's reported value of the $CO_2$ natural gas does not reflect its "reasonable value", because of its failure to include the value of its Helium component, thereby minimizing the $CO_2$ price.  Defendant has not marketed the $CO_2$ for the mutual benefit of itself and the Government, but only for its own benefit.  Defendant did not value the $CO_2$ in accordance with any of the described methods in the regulations. Dissipation of the McElmo Dome and Doe Canyon Helium further marginalizes the royalty paid to the Government on already suppressed $CO_2$ pricing.

32.     Due to the huge volume of $CO_2$ produced by Kinder Morgan, the damages sustained by the Government are significant.  Total recoverable damages may include direct recovery for the value of the Helium sold in violation of the Helium Act, as well as the failure to include the component Helium value in calculating a reasonable price for the $CO_2$ production.   Recoverable damages might also include the value of the approximately 25% residual Helium in sequestered $CO_2$ following EOR recovery.  The

sequestered gas is principally owned by the $CO_2$ producers and/or their affiliates.

33.     Potential damages also include the price per MCF differential in the $CO_2$ pricing had the value of the Helium component been included.   Again, due to the volume of $CO_2$ produced from both prospects, that pricing differential and the computation of loss of full value, and alternatively, the correspondent royalties to the Government is, upon information and belief, in the range of approximating one hundred million dollars, subject to finite computation.

34.     Notably, there is a potentially vast supply of sequestered helium along with $CO_2$ injected into EOR wells in the Permian, the value of which may also be compensable. When that $CO_2$ is recycled, the helium is sold again.   The Government, therefore, is twice deprived of the full value of the Helium—once upon sale of the $CO_2$; and again from the 25% preserved for private purchase(s). This is a key factor that distinguishes helium retained in the $CO_2$ stream from helium retained in natural gas. In the latter case, helium is simply released into the atmosphere upon combustion. In the former case, approximately 25% of the $CO_2$ stream is conserved—*after* title changes hands to the private buyer.  Kinder is effectively selling Helium it does not own, for no value or consideration, to purchaser(s) who retain 25% of the Helium after EOR recovery, with an in situ value approximating $100/MCF, for which the Government has also not been compensated.

35.     The intrinsic value of the Helium produced from McElmo Dome and Doe Canyon, upon information and belief, approximates $1.14 per MCF.  Relator estimates the total $CO_2$ produced from the McElmo Dome and Doe Canyon properties over the

relevant time period to be approximately 5 – 6 BCF, resulting in substantial lost revenue and compensation to the Government.   Relator reserves the right to assert multiple alternative damage theories as provided by law.

36.     The loss of the value of Helium sold as CO2 and diminished royalty values constitute compensable actual damages. In addition, Section 3729(a)(1)(G) of the False Claims Act provides that Kinder Morgan is liable for "3 times the amount of damages which the Government sustains because of the act of that person."

37.     In addition to actual and statutory damages, §3729 of the False Claims Act provides that Kinder Morgan is liable for civil penalties.   Available penalties for violations of the False Claims Act prior to August 1, 2016, range from $5,500 to a maximum of $11,000 per violation.   Effective August 1, 2016, penalties were increased to a minimum of $10,781 and a maximum of $21,563 per violation.   Each monthly royalty report, production report and remittance statement filed and/or presented by Kinder Morgan to the Government from 2008 to present constitute separate violations subject to penalty.

## CLAIM FOR RELIEF

### Violation of the False Claims Act (31 U.S.C. § 3729)

38.     Relator adopts and reasserts the allegations set for in Paragraphs 1- 37 herein.

39.     By failing to disclose the production and sale of Helium in contravention of the Helium Act; by representation the total production volume as CO2; and by understating the value of the CO2 inclusive of the value of its Helium component,

Defendant has (a) knowingly presented or caused to be presented a false or fraudulent claim; (b) knowingly made, used or caused to be made or used a false record or statement material to a false or fraudulent claim; (c) had possession, custody or control of property and money used or to be used by the Government and knowingly delivered or caused to be delivered less than all of that money or property; and (d) knowingly made, used or caused to be made or used false records or statements to convert, conceal, avoid, or decrease an obligation to pay or transmit money for payment of Helium to the Government. 31 U.S.C. §3729(a)(1)(A), (B), (D), (E), and (G).

40.     Defendant's filing of monthly remittance statements and production/royalty reports constitutes false certifications that the volume(s) produced were $CO_2$ only, or alternatively, implied certification(s) of the accuracy and valuation of the $CO_2$ information and compliance with applicable law, including the Helium Act, which was, in fact, false, due to the failure to disclose the production of Helium and clearly differentiate the volume and value of the Helium component of $CO_2$.  The numerous production reports, royalty statements, and remittance statements issued by Kinder Morgan over the past decade, which do not reflect any Helium component or value, knowingly concealed violations of the Helium Act, and has caused a harmful tendency to influence, or be capable of influencing, the Government to accept Defendant's facial $CO_2$ production reports and valuation(s), and royalty calculations materially predicated thereon.  31 U.S.C. §3729(d)(4).

41.     By failing to conduct and provide the Government with gas concentration analyses in connection with the $CO_2$ produced, as mandated by Gas Analysis Resolution

and Verification System (GARUS) 43 C.F.R. §§3175.10(b), 3175.120, and 3176.165, Defendant knowingly and intentionally deprived the Government of information necessary to know the volume of Helium being produced or otherwise make an informed decision as to whether the facial representations of $CO_2$ production volume and valuation were accurate.

42.   As a direct and proximate result of the wrongful conduct described above, the Government has not been paid appropriate royalties and/or direct compensation due and owing for the production of Helium from McElmo Dome and Doe Canyon, and has sustained, and continues to sustain, substantial damages, the exact amount of which will be proven at trial.

## PRAYER

43.   WHEREFORE, Relator Jack J. Grynberg, on behalf of the United States, respectfully requests this Court to find that Defendant, Kinder Morgan $CO_2$ Company, has damaged the Government as a result of its conduct proscribed by the False Claims Act and:

(a) that the Government recover from Defendant actual damages in the amount equal to the amount of direct revenues the Government should have received from the unauthorized production of Helium, and royalties on the $CO_2$ properly valued to include its Helium component;

(b) that the damages described in (a) be trebled as provided in 31 U.S.C. § 3729(a);

(c) that the period for which such damages are awarded be extended to the

maximum length of time permitted by law;

(d) that civil penalties ranging from $5,000 to $11,000 for each pre 2016 violation and $1078o1 to $21563 for each post 2016 violation, as applicable over the relevant time periods, be assessed against Defendant for each violation of the False Claims Act;

(e) that Defendant be ordered to discontinue the wrongful conduct described above and instead adopt appropriate practices -- as may be determined by the Court -- for determining the proper and honest value of the Helium produced from Defendant's properties in McElmo Dome and Doe Canyon;

(f) that the Court award the Relator all amounts as are permitted under 31 U.S.C. § 3730(d), including an appropriate share of any sums recovered and benefits obtained in this action, now or in the future, along with the Relator's reasonable expenses, attorney fees, and costs incurred herein; and

(g) that the Court grant any additional appropriate relief.

## DEMAND FOR JURY TRIAL

44.    The Relator demands a trial by jury pursuant to Fed. R. Civ. P. 38 on all issues so triable.

Respectfully submitted,

**THE CUNNINGHAM LAW FIRM**


SCOTT DOUGLAS CUNNINGHAM
Texas Bar No. 05243700
7670 Woodway, Suite 110
Houston, Texas  77063
(713) 273-8950
(713) 273-8951 (Fax)
E-mail: sdc1776@peoplepc.com
COUNSEL  FOR  RELATOR  GRYNBERG
PRODUCTION CORPORATION



# THE CUNNINGHAM LAW FIRM

7670 Woodway, Suite 110 • Houston, Texas 77063
Tel: 713.273.8950 • Fax: 713.273.8951
E-mail: sdc1776@peoplepc.com
www.thecunninghamlawfirm.com

**RECEIVED**
JUL 1 0 2018
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

July 9, 2018

*Via Federal Express*

Karen Mitchell
Clerk, U.S. District Court
Northern District of Texas
Dallas Division
1100 Commerce Street, Room 1452
Dallas, Texas  75242

# 3 18 - ⸱ 1 7 7 5 - K

Re:   Cause No. _____; *United States of America Ex. Rel. Grynberg Production Corporation v. Kinder Morgan CO2 Company, LP*; In the United States District Court, Norther District of Texas, Dallas Division **[FILED UNDER SEAL PURSUANT TO 31 U.S.C. §§3729-31]**

Dear Ms. Mitchell:

Enclosed for filing please find the following to be filed under seal pursuant to 31 U.S.C. §§3730(b):

1.   Civil Cover Sheet;
2.   Original Complaint;
3.   Certificate of Interested Persons;
4.   Summons in a Civil Action (to be executed by the District Clerk);
5.   Withhold Issuance of Service; and
6.   Firm check in the amount of $400.00, made payable to Clerk, U.S. District Court, Northern District of Texas, which constitutes payment of the filing fee.

Please note that although I am requesting your execution of the Summons in a Civil Action, I am requesting that you withhold issuance of service on the Defendant at this time, pending expiration of the 60 day seal period, as specified in 31 U.S.C. Sec. 3730(b)(2).

In addition to the original of each of the foregoing, enclosed are five extra copies of all documents to be file stamped: one copy for you to retained for the assigned Judge, and four copies to be returned to the undersigned for service on the Defendant and on the Government pursuant to 31 U.S.C. Sec. 3730(b)(2) and F.R.C.P. 4.

Please return the executed Summons along with the filed stamped copies of the other Items to the undersigned for appropriate service. I have included return Federal Express airbill label(s) and envelope(s) for returning the file stamped copies.

Karen Mitchell
Clerk, U.S. District Court
July 9, 2018
Page 2


       If you have any questions or need additional information or documentation to effectuate the filing of this Qui Tam action under seal, please do not hesitate to contact me.

       Thank you for your assistance in this matter.

                    Sincerely,


                    SCOTT DOUGLAS CUNNINGHAM

SDC/abc
Enclosures
I:\Grynberg\Grynberg-Kinder Morgan Helium (Qui Tam)\Correspondence\Clerk.ltr.001.wpd