IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA *ex rel.* §
GRYNBERG PRODUCTION §
CORPORATION, §
§
      Plaintiff-Relator, §
§
v. §       Civil Action No. 3:18-CV-1775-K
§
KINDER MORGAN CO$_2$ §
COMPANY, L.P., §
§
      Defendant. §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Kinder Morgan CO$_2$ Company, L.P.'s Motion to

Dismiss Plaintiff-Relator's Original Complaint Under Fed. R. Civ. P. 12(b)(6) and 9(b)

(Doc. No. 21). The Court has carefully considered the motion, the response, the reply,

the sur-reply, the supporting appendices, any relevant portions of the record, and the

applicable law. Moreover, the Court has taken notice of the United States' Statement

of Interest (Doc. No. 45), the respective responses of Plaintiff-Relator Grynberg

Production Corporation (Doc. No. 48) and Defendant Kinder Morgan CO$_2$ Company,

L.P. (Doc. No. 51), as well as the reply filed by the United States (Doc. No. 57). For

the following reasons, the Court **GRANTS** Defendant Kinder Morgan CO$_2$ Company,

ORDER – PAGE 1

L.P.'s Motion to Dismiss.  The Court **DENIES** Plaintiff-Relator Grynberg Production Corporation's request for leave to amend its Original Complaint.

## I.    Factual and Procedural Background

On July 10, 2018, Plaintiff-Relator Grynberg Production Corporation ("Relator") initiated this *qui tam* action on behalf of the United States of America (the "Government") against Defendant Kinder Morgan $CO_2$ Company, L.P. ("Defendant"). Realtor brings this action under the False Claims Act, 31 U.S.C. § 3729, *et seq.*  In its Original Complaint ("Complaint"), Relator alleges Defendant has been and currently does produce carbon dioxide ("$CO_2$") pursuant to its leases with the federal government for the fields at the McElmo Dome Leadville Unit ("McElmo Dome") and the Doe Canyon in Montezuma and Dolores Counties, Colorado, respectively.  Pursuant to federal statutes and regulations, the Government "reserves the ownership of and the right to extract helium from all gas produced" under leases of federal lands and further provide that a private party may extract and sell helium under a separation agreement negotiated with the Government.  30 U.S.C. § 181; 50 U.S.C. § 167a; 43 C.F.R. §§ 16.1 & 3100.1.

Although Defendant's leases permit the production of $CO_2$, Relator alleges that Defendant has been and currently does produce helium "concurrently" with its $CO_2$ production from the McElmo Dome and Doe Canyon fields.  Relator further alleges

that Defendant never entered into a separation agreement with the Government for either field which would permit Defendant to extract and sell helium. (Relator does allege a third-party entered into a separation agreement with the Government in 2013 for the helium Defendant produced at Doe Canyon, and this agreement became "operational" in 2015 and continues to-date.)

Even though Defendant was producing a $CO_2$ gas stream with a helium component ("commingled helium"), Relator alleges that Defendant "never disclosed the fact that Helium was a percentage component of $CO_2$ production; that Helium was being produced in violation of "The Helium Act"; and never disclosed the volume and value of that Helium production." As a result, Relator alleges Defendant "knowingly and intentionally misrepresented" that it was producing only $CO_2$ in violation of "The Helium Act" and failed to compensate the Government for the commingled helium.

Upon filing this case, the Complaint was sealed and served on the Government. Ultimately, the Government declined to intervene in the case, and the Complaint was unsealed and served on Defendant. Subsequently, Defendant filed the instant motion to dismiss which is ripe for determination. Although the Government declined to intervene, it filed a Statement of Interest ("SOI") after the motion to dismiss was fully briefed. Both Relator and Defendant filed their respective responses to the SOI, and the Government filed a reply.

ORDER – PAGE 3

## II.     Legal Standards

### A.     Motion to Dismiss

In considering a Rule 12(b)(6) motion, a court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  A well-pleaded complaint must allege facts upon which the claims are based and not be a conclusory recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  However, a court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  A complaint must state sufficient facts such that the "claim has facial plausibility" and is not merely "possible." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The alleged facts must nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A plaintiff pleads a claim with facial plausibility when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678.  The complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the defendant. *Twombly*, 550 U.S. at 555 (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)).  "[A] complaint should not be dismissed under [Rule 12(b)(6)] for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)(per curiam).

The Court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings, including any attachments thereto.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The Fifth Circuit has held that district courts may consider documents attached to the motion to dismiss when those documents "are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim."  *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

### B.    False Claims Act

The False Claims Act (the "FCA") imposes liability on a person who, in relevant part to this case:

> (D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property; [or] (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1).  Although the Government may initiate an action for an FCA violation, a private party may also enforce an action under the FCA.  § 3730(a)-(b).  Such an action is referred to as a *qui tam* action, and the private party is referred to as the "relator".  *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932 (2009).  If a relator initiates a *qui tam* action, the U.S. has 60 days to review the claim and determine whether to elect to intervene or decline.  § 3730(b)(2).  Even if the U.S. declines to intervene as a party, it remains the party in interest in the *qui tam* action.  *Eisenstein*, 556 U.S. at 930.

## III.   Legal Analysis

In its Motion to Dismiss, Defendant contends Relator's Complaint must be dismissed as a matter of law because Relator fails to plausibly allege that Defendant violated any federal statutory, regulatory, or contractual obligation or duty to the Government as it pertains to helium.  Specifically, Defendant argues that: (1) its production of $CO_2$ with commingled helium does not violate 30 U.S.C. § 181 (which Relator refers to as "The Helium Act"); (2) none of Defendant's alleged actions violate any other statute or regulation cited by Relator regarding helium production or separation; (3) likewise, none of Defendant's alleged actions violate the federal leases; and (4) Defendant had no duty to report the presence of or pay royalties on the helium contained in its $CO_2$ production pursuant to the other regulations Relator cites.

ORDER – PAGE 6

Defendant also asserts that Relator's Complaint must be dismissed because Relator fails to plausibly allege a cognizable violation of the False Claims Act ("FCA"), and certainly does not do so with the required particularity.

Relator responds that it has stated a claim for which relief can be granted because: (1) "The Helium Act" and related regulations do not permit Defendant to extract helium under its federal leases; (2) no other statute or regulation permits Defendant to take helium because the Government owns it; (3) the federal leases do not allow Defendant to extract helium; and (4) Defendant is violating federal reporting requirements in failing to report the helium commingled in the $CO_2$ Defendant produced.  Relator also responds that it has plausibly pleaded its FCA with the required particularity.

The Court agrees with Defendant that Relator's Complaint must be dismissed as a matter of law because Relator failed to plausibly allege that Defendant violated any federal statutory, regulatory, or contractual duty or obligation owed to the Government relating to helium.  Specifically, the Court finds that: (1) Relator failed to plausibly allege Defendant violated any statute, regulation, or lease in producing a $CO_2$ stream with commingled helium where the helium was never extracted; (2) Relator failed to plausibly allege Defendant was obligated under any statute, regulation, or lease to compensate the Government for the commingled helium simply because the

ORDER – PAGE 7

Government owns it; (3) Relator failed to plausibly allege any of Defendant's actions with respect to helium violated any statute, regulation, or lease; and (4) Relator failed to plausibly allege Defendant was obligated under any statute, regulation, or lease to report the volume of that commingled helium and to pay the Government royalties accordingly.  Because there are no plausible allegations that Defendant owed the Government any statutory, regulatory, or contractual duty or obligation or that Defendant violated any statute, regulation, or lease with respect to the helium, particularly as any obligation or violation relates to the payment of royalties on the helium and the Government's ownership of the helium, Relator has failed to state a claim under the FCA on which relief can be granted. *See* 31 U.S.C. § 3729(a)(1)(D) & (G).  Because the Court finds that the Complaint must be dismissed, the Court need not address Defendant's alternative argument that Relator did not plausibly plead a violation of the FCA.

### A.    Relator's Allegations

Relator alleges that "[d]iscovery that the Government has been paid royalties during all the relevant times on the basis of $CO_2$ pricing alone, rather than pricing inclusive of the value of its Helium component, or, alternatively, that the Government has not been paid full value for the Helium produced in violation of the Helium Act, forms the basis of this Qui Tam Action."  Relator alleges that Defendant violated the

cited statutory and regulatory provisions because Defendant "produced the Helium concurrently with the $CO_2$ taken from [the McElmo Dome and Doe Canyon fields]," Defendant did not have a separation agreement with the Government to extract helium from either the McElmo Dome or Doe Canyon fields, Defendant falsely reported the total production volume as only $CO_2$ and paid the Government royalties on the $CO_2$ only rather than royalties on the helium component, and Defendant sold (and continues to sell) the helium in the $CO_2$ stream even though the Government owns the helium.  Relator further alleges that Defendant "fail[ed] to disclose the production and sale of Helium in contravention of the Helium Act; by represent[ing] the total production volume as $CO_2$; and by understating the value of the $CO_2$ inclusive of the value of its Helium component" which caused "the Government [to not be] paid appropriate royalties and/or direct compensation  due and owing for the production of Helium from McElmo Dome and Doe Canyon."   Relator also alleges Defendant violated its federal leases because the leases "exclude the right to extract Helium." Finally, Relator alleges that Defendant failed to report the helium "as part of the $CO_2$ volume and price assessment for royalties payable to the Government," and this "concealed violation(s) of the Helium Act."

ORDER – PAGE 9

## B.    Federal Statutes and Regulations

Relator alleges that Defendant violated the relevant statutory and regulatory provisions in "selling the Government's Helium, which it does not own, at a price significantly less than its market value."  Relator alleges the relevant statutes "provide[ ] for the exclusive ownership by the Government [of helium] and excludes Helium from gases subject to lease" and the federal regulations "require Defendant to obtain fair market value for all gases taken from leased federal lands."

Relator alleges "that Helium was being produced in violation of 30 U.S.C. § 181 and 43 C.F.R. § 3100.1 by Defendant's production of a $CO_2$ stream with commingled helium.  Section 181 provides, in relevant part:

> The United States reserves the ownership of and the right to extract helium from all gas produced from lands leased or otherwise granted under the provisions of this chapter, under such rules and regulations as shall be prescribed by the Secretary of the Interior: *Provided further*, That in the extraction of helium from gas produced from such lands it shall be so extracted as to cause no substantial delay in the delivery of gas produced from the well to the purchaser thereof, and that extraction of helium from gas produced from such lands shall maintain the lease as if the extracted helium were oil and gas.

30 U.S.C. § 181.  The related federal regulation states that "the ownership of and the right to extract helium from all gas produced from lands leased or otherwise disposed of under the Act have been reserved to the United States."  43 C.F.R. § 3100.1.  The Court notes that Relator refers to § 181 and § 3100.1 as "The Helium Act" in its

Complaint.  It appears from the Court's research that Relator is mistaken in this reference.  *See Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 15, 126-27 (1974) (Supreme Court citing the Helium Act Amendments, 50 U.S.C. § 167 *et seq.* as "the Helium Act"); *N. Helex Co v. U.S.*, 524 F.2d 707 (Ct. Cl. 1975) (same internal citation); *Panhandle E. Pipeline Co. v. Fed. Power Comm'n*, 359 F.2d 675, 676 (8th Cir. 1966) (same internal citation).  Therefore, for clarity, the Court will identify each statutory and regulatory section specifically.

Sections 181 and 3100.1 indeed reserve the ownership of helium to the Government.  These provisions also unequivocally address the Government's right to *extract* helium from the gas *produced* from federal lands.  Defendant argues that the clear language of § 181 and § 3100.1 do not prohibit Defendant from producing $CO_2$ that contains commingled helium.  Defendant contends that § 181 actually presumes helium will be present in "all gas produced from federal lands" as it grants the Government "the right to extract helium from all gas produced" from federally leased lands.  Furthermore, no other statute or regulation prohibits Defendant's conduct with respect to the commingled helium, specifically as to production or separation. Relator responds that under § 181 the Governments owns the helium, and neither § 181 or any other statute or regulation allows "an operator such as [Defendant] to remove the helium if the government does not elect to do so."

ORDER – PAGE 11

1.   Government's Right to Extract Helium

The fatal flaw of Relator's argument as well as its allegations is that Relator very obviously conflates the terms "extract" and "produce" in both its Complaint and responsive briefing.  The clear language of both § 181 and § 3100.1 reflects these two terms are not synonymous as they are each used in a separate context within the same sentence within the same statutory and regulatory provisions.  Section 181 addresses "the right to extract helium from all gas produced from" leased federal lands, and Section 3100.1 contains identical language.  "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry "their ordinary, contemporary, common meaning."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993).  The word "extract" is defined as "to draw out or forth; to pull out from a fixed position."  BLACK'S LAW DICTIONARY 704 (10th ed. 2014).  The word "produce" is defined as "to bring (oil, etc.) to the surface of the earth."  *Id.* at 1401.  Furthermore, "[t]he definition[s] of words in isolation however, [are] not necessarily controlling in statutory construction. . . . Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."  *Cascabel Cattle Co., L.L.C. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020) (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)).  "Beginning with

context, 'different words within the same statute should, if possible, be given different meanings.'" *Cascabel Cattle*, 955 F.3d at 451 (quoting *BNSF Ry. Co. v. United States*, 775 F.3d 743, 755 n.86 (5th Cir. 2015)).

In its Complaint, Relator's factual allegations repeatedly, and almost exclusively, speak to Defendant's "production" of helium:

> [N]o separation agreement(s) existed with respect to the Helium produced by Kinder Morgan.
>
> Nonetheless, Kinder produced the Helium concurrently with the $CO_2$ taken from these units.
>
> Kinder Morgan is clearly producing Helium and falsely reporting it as $CO_2$.
>
> Mr. Grynberg has knowledge of the Helium unlawfully produced from federal lands . . . .
>
> Direct compensation is, therefore, owed by Kinder Morgan to the U.S. government for the value of the Helium unlawfully produced and sold from Doe Canyon and McElmo Dome during the relevant time periods.
>
> Kinder Morgan, however, never disclosed the fact that Helium was a percentage component of $CO_2$ production; that Helium was being produced in violation of The Helium Act; and never disclosed the volume and value of that Helium production.
>
> By reporting the entirety of the production volume as $CO_2$, Kinder Morgan knowingly and intentionally misrepresented the volume and value of $CO_2$ and Helium produced.

ORDER – PAGE 13

>[A]nd the failure of Kinder Morgan to disclose, differentiate and value the component of Helium being produced and reported as $CO_2$.
>
>Defendant has failed to report and pay for the value of Helium produced from Government leases . . . .
>
>By failing to disclose the production and sale of Helium in contravention to the Helium Act . . . .
>
>[T]he Government has not been paid appropriate royalties and/or direct compensation due and owing for the production of Helium from the McElmo Dome and Doe Canyon . . . .
>
>[T]hat the Government recover from Defendant actual damages in the amount equal to the amount of direct revenues the Government should have received from the unauthorized production of Helium, and royalties on the $CO_2$ properly valued to include its Helium component.

Only once does Relator use the term "extract" in its factual allegations—"By paying royalties on the reported sales of $CO_2$ and not separately reporting and paying royalties on the sale of Helium as part of the $CO_2$ volumes, or alternatively, by failing to pay the Government full value for the Helium unlawfully extracted . . . ." Other than this single allegation, Relator does not ever allege that Defendant extracted any helium.

Relator's response does not fare any better. Even though Relator uses "extract" as opposed to "produce" in its argument, Relator continues to conflate the two terms and still fails to submit factual support for Defendant extracting any helium from the $CO_2$ stream after it was produced. *See* 30 U.S.C. §181; 43 C.F.R. §3100.1. For

ORDER – PAGE 14

example, Relator submits that "[Defendant] admits [in its motion] that it has been extracting helium from Doe Canyon and McElmo Dome."   But Relator is wrong because Defendant in no way concedes that it "extracted" helium from either lease; rather, Defendant admits that it produced $CO_2$ gas in which commingled helium was present.

The parties do not appear to dispute that, under § 181 and § 3100.1, the right to extract helium from gas produced from leased federal lands is reserved to the Government.   But, despite Relator's argument to the contrary, neither § 181 nor § 3100.1 prohibit a lessee from producing a gas stream with commingled helium that is not extracted.   In fact, the clear language of both provisions contemplates that gas produced by lessees on federal lands will contain helium because both provisions reserve the Government's "right to extract helium from all gas produced".   30 U.S.C. § 181; 43 C.F.R. §3100.1.

Relator wholly fails to allege Defendant extracted helium from any $CO_2$ stream it produced at either McElmo Dome or Doe Canyon during the relevant time period. In fact, Relator's allegations actually belie any suggestion that Defendant extracted the helium, including:

> Mr. Grynberg has knowledge of the Helium unlawfully produced from federal lands . . . [and] about sale of Helium as a component of $CO_2$.

ORDER – PAGE 15

[T]he normal practice of simply selling the Helium within the $CO_2$ stream constitutes a loss of a significant volume of Helium for which the Government has not been compensated.

The sequestered [helium] is principally owned by the $CO_2$ producers and/or their affiliates.

The Government, therefore, is twice deprived of the full value of the Helium—once upon sale of the $CO_2$ [by Defendant]; and again from the 25% preserved for private purchase(s).

That Defendant produced $CO_2$ gas streams containing commingled helium which was sold with the $CO_2$ stream, not as a separate product that was extracted, does not constitute a violation of § 181 or § 3100.1 as Realtor alleges, and Relator cites no other statute or regulation prohibiting the production of a gas stream containing commingled helium. Sections 181 and 3100.1 speak to the right to *extract* helium from the gas stream after the gas stream is produced under the leases, not to produce helium directly from the federal lands as part of the larger $CO_2$ gas stream. Relator itself confirms this in its response, arguing that "the proper interpretation" of § 181 is "evinced by the plain language" that "any extraction of that helium by an operator without permission" of the Government is the violation. However, Relator's own factual allegations in its Complaint simply do not permit this Court to reasonably infer that Defendant violated § 181 and § 3100.1 because Relator does not allege Defendant extracted any helium.

ORDER – PAGE 16

2. <u>Government's Ownership of Helium</u>

As the Court has previously noted, § 181 and § 3100.1 unequivocally reserve the ownership of helium to the Government.  Relator appears to allege that the Government's ownership right pursuant to § 181 and § 3100.1 is a separate right in and of itself that creates an obligation Defendant owes the Government under those provisions.  Under this theory, Relator alleges that Defendant is obligated to compensate the Government for the commingled helium even though it is not extracted from the $CO_2$ gas stream.  The Court agrees with Defendant that no such obligation exists. Neither § 181 or § 3100.1 creates any such obligation, and Relator cites no other statute or regulation that does create such an obligation. This is a purely legal conclusion Relator alleges that has no support.

In its response, Relator argues that Defendant may not "take the helium" that belongs to the Government if it does not elect to extract the helium.  Relator contends that the absence of a separation agreement does not "allow[ ] [Defendant] carte blanche to waste or dispose of the helium as it sees fit."  In its Complaint, Relator cites 50 U.S.C. § 167a and 43 C.F.R. § 16.1 as giving the Secretary of the Department of the Interior (the "Secretary") the authority to enter into "agreements with private parties for the recovery and disposal of helium" from federal lands.  43 C.F.R. § 16.1 provides that,

> the Secretary may enter into agreements with qualified applicants
> to dispose of the helium of the United States upon such terms as
> conditions as he deems fair, reasonable, and necessary to conserve
> such helium, whenever helium can be conserved that would
> otherwise be wasted or lost to Federal ownership or use in the
> production of oil or gas from Government lands embraced in an
> oil and gas lease or whenever federally owned deposits of helium-
> bearing gas are being drained.

50 U.S.C. § 167a similarly provides that the Secretary "may enter into agreements with private parties for the recovery and disposal of helium on Federal lands upon such terms and conditions as the Secretary deems fair, reasonable, and necessary." As the language of § 16.1 demonstrates, Congress clearly contemplated that helium may "otherwise be wasted or lost to Federal ownership or use in the production of oil or gas" from leased federal lands. To remedy this, the Secretary is authorized to enter into agreements when "necessary to conserve such helium" and when it can be conserved. The Court agrees that Defendant is not permitted "carte blanche" privileges with respect to the commingled helium simply because the Government does not elect to extract it. But neither does that situation create an obligation for Defendant to somehow "preserve" the commingled helium for the Government, and Relator points to no statute or regulation that does create such an obligation. This is particularly so in light of the Government's itself recognizing that helium may "otherwise be wasted or lost to Federal ownership" if not conserved through a separation agreement. *See* 43 C.F.R. § 16.1.

3.    Conclusion

Relator bears the burden of pleading facts to show that Defendant's liability is at least plausible.  *See Iqbal*, 556 U.S. at 678.  "[C]onclusory allegations will not suffice to prevent a motion to dismiss and neither will unwarranted deductions of fact."  *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).  Relator did not plausibly allege that Defendant violated any federal statute or regulation in producing a $CO_2$ gas stream with commingled helium that was never extracted or in failing to compensate the Government for that commingled helium because the ownership right of helium is reserved to the Government.  Moreover, none of Defendant's conduct as alleged by Relator violates any other identified statute or regulation with respect to the helium.  Relator wholly failed to meet its burden as there are simply no allegations that would permit the Court "to draw the reasonable inference that the defendant is liable" for violations of these statutes and regulations.  *See Iqbal*, 556 U.S. at 678.  Because Relator failed to plausibly allege that Defendant violated any statutory or regulatory obligation owed to the Government in this instance, Relator has failed to state a claim under the FCA on which relief can be granted on these grounds.

ORDER – PAGE 19

C.    **Federal Leases**

As an initial matter, the Court addresses the exemplars of the nine unique federal leases submitted by Defendant in support of its motion.  Relator objects to these documents and urges the Court to determine the motion to dismiss without considering this "improperly-attached evidence".  While the Court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings, the Fifth Circuit allows district courts to consider documents attached to the motion to dismiss when those documents "are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Collins*, 224 F.3d at 498–99.  Review of this limited extrinsic evidence is permitted because, "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499.  In its motion, Defendant contends that the "leases are an essential part of the Complaint" because it "repeatedly refers to the federal leases" prohibiting the production and sale of any $CO_2$ stream containing commingled helium without paying the Government for the value of the helium.  In its response, Relator concedes that the Complaint "references" the leases and that "the language of those leases plays a role in the determination of this lawsuit."  These leases are, therefore, central to Relator's claim.  *See id.*  Relator's objection to this extrinsic evidence is that the limited exception does not apply here

ORDER – PAGE 20

because "it is clear that [Defendant] did not attach all of the applicable leases."  Relator states that "[Defendant] may be correct that there are 'nine unique lease forms at issue,' or it may not."  Relator takes issues with Defendant, "the only party that actually has the leases in its possession", identifying these "exemplars" as the "nine unique lease forms at issue."  Relator complains that no discovery has taken place and asks the Court to allow the parties to conduct discovery on the leases, including deposing witnesses on the leases.

As to Relator's request for discovery on the lease, the Court **denies** this request. *Skidmore Energy, Inc. v. KPMG LLP*, 3:03-CV-2138-B, 2004 WL 3019097, at *12 n.6 (N.D. Tex. Dec. 28, 2004)(Boyle, J.) ("The Court will not allow the Plaintiffs to conduct a 'fishing expedition' in an effort to manufacture their claims.").  Turning to Relator's objection, Relator states that "it is clear that [Defendant] did not attach all of the applicable leases"; however, Relator provides no basis for this statement.  For example, Relator does not argue that other applicable lease forms actually do exist and contain language other than that contained in the exemplars provided (which all contain nearly, if not completely, identical language regarding helium).  The Court recognizes that Relator represents it sought the leases through the Freedom of Information Act ("FOIA") requests prior to filing this suit; however, there is no further explanation of what occurred in relation to those FOIA requests or why this suit was

filed before Relator had those leases considering the FCA claim is based, in part, on alleged violations of the lease provisions.   Moreover, in its responsive arguments regarding Defendant's conduct violating the leases, Relator cites to specific language in at least one of these exemplars and states that it is "similar to the statutes and regulations" cited by Relator in its Complaint.   Therefore, the Court finds these nine exemplars of the leases to be appropriate for consideration because they are referred to in Relator's Complaint and are central to this claim.   *See Collins*, 224 F.3d at 498–99.

Even without considering the exemplars, Relator fails to plausibly allege Defendant violated any of the leases.   In its Complaint, Relator alleges that Defendant violated the federal leases in producing and selling $CO_2$ streams with commingled helium and not compensating the Government for that helium.   Nowhere does Relator actually identify the lease provision(s) or language allegedly being violated by Defendant's production of $CO_2$ with commingled helium and/or for which Defendant failed to compensate the Government.   In its Complaint, Relator alleges that "leases [of federally-owned properties] exclude the right to extract Helium."   Other than reference to royalties owed generally under federal leases pursuant to federal regulations, there are no other factual allegations regarding the leases and certainly no specific factual allegations.   For this reason alone, Defendant argues that Relator has failed to sufficiently allege a claim regarding the federal leases.   The Court agrees.   "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. It is Relator's burden as the party bringing this action to allege sufficient factual content to plausibly allege a legally cognizable claim. With nothing more than a few conclusory statements and legal conclusion, there is no well-pleaded facts supporting Relator's claim that Defendant violated the leases it entered into with the Government on McElmo Dome and Doe Canyon fields. Even without consideration of the exemplar leases, Relator's claim based on the leases fails. *See id.*

When the Court does consider the exemplars submitted by Defendant, it is ever more clear that Relator did not sufficiently allege a violation of the leases, because none of them prohibit Defendant from producing a $CO_2$ stream with commingled helium nor do they require Defendant to compensate the Government for helium within the $CO_2$ stream even if it is never extracted. As the exemplars establish, these leases acknowledge the Government's ownership of and right to extract helium from gas streams produced from federal lands. As previously stated, Relator acknowledges the language in the leases "is similar" to § 181 and § 3100.1. But, citing one of the exemplars, Relator contends that the lease permits Defendant "to 'drill for, mine, extract, remove, and dispose of all the oil and gas deposits, *except helium gas*. . .' In other words, [Defendant] is not permitted to extract helium from McElmo Dome and Doe

ORDER – PAGE 23

Canyon." Relator argues that "the leases are clear" that if the Government does not choose to extract the helium, "[Defendant] is not allowed to extract the helium, but must preserve it."

First, Relator does not allege in its Complaint that Defendant was obligated under the leases to "preserve" the commingled helium if the Government did not elect to extract it. Relator may not amend its Complaint through its response to Defendant's motion to dismiss. *See Phalanx Grp. Int'l v. Critical Sols. Int'l*, 3:18-CV-244-B, 2019 WL 954727, at *6 (N.D. Tex. Feb. 26, 2019)(Boyle, J) (claim for breach of contract dismissed where plaintiff attempted to "shift[ ] grounds" alleging, for first time in its response, that an amendment to the parties' agreement, rather than agreement itself, was basis of its breach of contract claim). "[I]t is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time." *Diamond Beach Owners Assoc. v. Stuart Dean Co., Inc.*, Civ. Action No. 3:18-CV-0173, 2018 WL 7291722, at *4 (S.D. Tex. Dec. 21, 2018). The Court will not consider this as it is asserted for the first time in the response.

Relator fails to cite any language in the leases that requires Defendant: (1) to pay the Government for any commingled helium that is never extracted; (2) take any specific action with respect to the commingled helium if the Government does not elect to extract it; or that prohibits Defendant (3) from producing any $CO_2$ stream with

ORDER – PAGE 24

commingled helium.  Furthermore, as previously discussed at length with respect to § 181 and § 3100.1, Relator again misunderstands the term "extract" in this instance. The language of the exemplar lease that Relator cites in support of its argument states, "The [Government] . . . reserves the ownership of helium and the *right to extract or have it extracted from all gas produced under this lease*. . . ."  (This language is found in all of the exemplar leases Defendant submitted.)  Just as the language of § 181 and § 3100.1 provide, this language in the leases refers to extracting helium from the gas produced from the federal land, not extracting or "producing" helium directly from the federal land.  It is that process of extracting, or separating, the commingled helium from the larger $CO_2$ stream after Defendant produced it from McElmo Dome and Doe Canyon which is reserved for the Government.  Relator cites to no other lease provision or language to support its argument that it plausibly alleged a contractual obligation Defendant owed the Government pursuant to the leases or that Defendant violated the federal leases.  The Court concludes Relator did not plead factual allegations which would allow the Court to reasonably infer that Defendant is liable for violating the federal leases for McElmo Dome and Doe Canyon.  *See Iqbal*, 556 U.S. at 758. Accordingly, Relator failed to state a claim under FCA on which relief can be granted on these grounds.

### D.   Disclosure and Identification of Helium Component and Corresponding Royalty

Relator also alleges Defendant violated relevant federal regulations in failing "to properly identify, disclose, and price the Helium component of $CO_2$ produced from" the McElmo Dome and Doe Canyon leases.  In its Complaint, Relator cites several federal regulations as support for its allegation that Defendant was required to report "the correct value of natural gas produced from federally owned property", which included helium, and to pay royalties on that commingled helium.

None of these regulations which Relator cites, however, actually support its allegation that Defendant was required to report helium volumes and compensate the Government accordingly.  Those regulations specifically excluded helium from reporting or address helium that is marketed as a separate product, not commingled helium as Relator has alleged.  Relator concedes in its response that, "[Defendant] contends that there are no other regulations that require it to report helium volumes to the [Government].  As regards royalty payments, this is true enough . . ."  In an effort to salvage its allegation that Defendant violated a reporting obligation, Relator states "[b]ut this is far from the end of the inquiry."  Changing course, Relator identifies for the first time in its response two federal forms it contends impose a duty on Defendant to accurately report the commingled helium and the volume in the $CO_2$ gas it produces at McElmo Dome and Doe Canyon—the Office of Natural Resources

ORDER – PAGE 26

Revenue Form 2014s ("ONRR") and the Oil and Gas Operations Reports ("OGOR"). Relator does not cite let alone rely on either form in its Complaint as the basis for its allegation that Defendant was obligated to "report and pay for the value of Helium produced from Government leases" and that Defendant's failure to do so allegedly "concealed violation(s)" of § 181 and/or § 3100.1. As previously noted, Relator may not amend its Complaint through its response to Defendant's motion to dismiss. *See Phalanx Grp.*, 2019 WL 954727, at *6 (claim for breach of contract dismissed where plaintiff attempted to "shift[ ] grounds" alleging, for first time in its response, that an amendment to the parties' agreement, rather than agreement itself, was basis of its breach of contract claim). "[I]t is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time." *Diamond Beach*, 2018 WL 7291722, at *4. The Court will not consider these forms as the basis for Relator's allegation that Defendant violated federal regulatory reporting obligations as they are asserted for the first time in its response. Because Relator concedes in its response that the regulations it cites in the Complaint do not support its allegations that Defendant was obligated to report and pay royalties on the commingled helium and that Defendant violated these regulations, the Court concludes Relator did not sufficiently plead this claim. Because Relator failed to plausibly allege Defendant violated a regulatory obligation to report the helium separately from the $CO_2$ gas produced and

ORDER – PAGE 27

to pay royalties to the Government on the commingled helium separately from those paid for the $CO_2$ gas, Relator failed to state a claim under the FCA on which relief can be granted on these grounds.

> E.     **Government's Statement of Interest**

Although the Government declined to intervene in this case, it remains the party in interest in this *qui tam* action.  *Eisenstein*, 556 U.S. at 930.  After briefing related to Defendant's motion to dismiss was completed, the Government moved to file a Statement of Interest ("SOI") (Doc. No. 45), which the Court granted.  The Court also granted leave to Relator and Defendant to file their respective responses to the Government's SOI.

The Court is not bound by the Government's SOI but has considered it as providing "the valuable perspective of the [Department of Justice]" on the statutes and regulations at issue.  *See Alvey v. Gualtieri*, Case No. 8:15-CV-1861-T-33AEP, 2016 WL 6071746, at *2 (M.D. Fl. Oct. 17, 2016)  Moreover, the Government filed its SOI only to address,

> Relator's incorrect assertions that (1) [Defendant] is prohibited from producing helium from federal, leased lands, along with a $CO_2$ gas stream and (2) [Defendant] is obligated to compensate the [Government] for helium produced from federal, leased lands, as part of a $CO_2$ stream, regardless of whether the helium is ultimately extracted from the gas stream or sold as a separate product.

ORDER – PAGE 28

*See* Doc. No. 45 at 1. (The Government also addressed "Defendant's assertion that a regulatory violation is not material under the FCA, as a matter of law, where the [G]overnment knows of the violation and takes no action." The Court does not address this argument made by Defendant as the Court finds Relator's Complaint must be dismissed as a matter of law because Relator failed to sufficiently allege any underlying violation by Defendant to support Relator's FCA claim.)

The Government's SOI only confirms what the Court had already concluded in its absence. Relator confuses the terms "extract" and "produce" which is critical in establishing liability under the relevant federal statutes, regulations, and leases. As the Government points out, "Relator confuses the production of helium from a formation as part of a larger gas stream with the extraction of helium from the gas stream after it has been produced from a formation." Furthermore, "the law does not require a party to compensate the government for comingled helium that is produced as part of a gas stream from federal lands, but that is never extracted from the gas stream or sold as a separate product." The Government confirms that "[Defendant] is allowed to produce gas that contains $CO_2$ and commingled helium from the areas at issue, and [Defendant] is not obligated to compensate the government for the helium unless the helium is extracted from the $CO_2$ gas stream."

The Court reviewed and considered Relator's response; however, the Court is not persuaded any more by these arguments than it was by Relator's response and sur-reply to the motion to dismiss.   The Court finds it humorous, if not ironic, that Relator accuses the Government of "never actually identif[ying] 'the law' to which it is referring" in stating that no statute or regulation proscribes Defendant's actions when Relator itself does the same—never identifies "the law" which specifically prohibits Defendant from producing a gas stream contained commingled helium that is never extracted and which specifically requires Defendant to pay the Government for that commingled helium even if it is not extracted.  Relator contends that "[Defendant's] liability under the FCA flows from its failure to report to the [Government] that it was producing helium out of the formations, instead reporting helium volumes as it [sic] they were $CO_2$."  The Government clearly stated in its SOI that Defendant is allowed to produce helium from a formation as part of a larger gas stream; it is only the extraction of helium from that gas stream after it has been produced from the formation that triggers an obligation to compensate the Government.

The Government filed a Reply in Support of its Statement of Interest in which the Government restated that "the obligation to compensate the Government for helium from federal lands arises when the helium is extracted from the gas stream—not when helium is commingled in a produced gas stream."

ORDER – PAGE 30

Again, the Government's SOI is not binding on this Court, but, as the Government is the real party in interest in this case, the Court finds it, and its Reply, valuable and informative in confirming what the Court had concluded.

### F.      Conclusion

As alleged in the Complaint, Relator's FCA claim is premised on allegations that federal statutes, regulations, and leases prohibit Defendant from producing (and selling) a $CO_2$ gas stream with commingled helium, obligate Defendant to report the commingled helium separate from the $CO_2$ gas produced, and require Defendant to compensate the Government for the commingled helium even if it is not extracted. Taking all of Relator's well-pleaded allegations as true and viewing those in the light most favorable to Relator, as the Court is required to do, Relator's allegations are not facially plausible because the Court cannot draw a reasonable inference that Defendant is liable for any violation of a statute, regulation, or lease. Relator fails to plausibly allege any obligation Defendant owed the Government under any statute, regulation, or lease. The Court cannot infer even the "mere possibility of misconduct" by Defendant based on the well-pleaded facts, therefore Relator has not shown that it is entitled to relief. *Iqbal*, 556 U.S. at 678. "[A] complaint should not be dismissed under [Rule 12(b)(6)] for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Ramming*, 281 F.3d at 161.  For all the foregoing reasons set forth in the Court's analysis, it is more than apparent that Relator can prove no set of facts in support of its FCA claim which would entitle it to relief.  The Court must grant Defendant's motion to dismiss as Relator does not plead a claim with facial plausibility and fails to state a claim on which relief can be granted.

## IV.    Relator's Request to Amend the Complaint

When a party cannot amend a pleading as a matter of course, the party may amend a pleading only "with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*  However, "leave to amend under Rule 15 is by no means automatic." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003).  Although Rule 15(a) favors granting leave to amend, the decision whether to grant or deny leave to amend a pleading is a matter within the district court's discretion. *See Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590–91 (5th Cir. 2016). It is well established that a party seeking to amend a pleading under Rule 15(a) need not always file a formal motion; but the party must "give the court some notice of the nature of his or her proposed amendments" and support the request for leave to amend with "*some* specificity" which is required.  *Id.* at 590; *see Willard*, 336 F.3d at 387 ("A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for

the amendment and the relief sought."). A plaintiff that simply "tack[s] on a general curative amendment request" in response to a motion to dismiss does not provide a sufficient basis for why the court should grant leave. *Goldstein*, 340 F.3d at 254. "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* FED. R. CIV. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Willard*, 336 F.3d at 387 (internal quotation omitted).

In a single paragraph of its response, Relator requests that, "if the Court believes that the Complaint is deficient, Grynberg requests that the Court grant leave to amend its Complaint." Relator then quotes a Southern District of Texas case stating that a plaintiff should generally be allowed to amend once before the action is dismissed. Relator's one paragraph entitled "Alternative Motion for Leave to Amend" is the epitome of "a general curative amendment request." *See Goldstein*, 340 F.3d at 254. Realtor provides no explanation for how it might cure any of the deficiencies raised by Defendant, such as whether there are additional, specific facts that might remedy the pleading defects. *See id.* at 255 (holding that the district court properly exercised its discretion in denying leave to amend because plaintiffs "did not suggest in their responsive pleading any additional facts not initially pled that could, if necessary, cure the pleading defects"). A party may amend its pleading once as a matter of course "any

time before a responsive pleading is served." FED. R. CIV. P. 15(a).  A motion to dismiss under Rule 12(b)(6) is not a responsive pleading, therefore "the filing of such a motion does not extinguish a party's right to amend as a matter of course." *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002).  Relator did not amend its Complaint as a matter of course even after Defendant filed the instant motion to dismiss asserting numerous pleading deficiencies.

The Fifth Circuit has "not provided strict guidelines as to what constitutes a sufficient request for leave to amend," but that court has stated that "it is clear that *some* specificity is required." *Thomas*, 832 F.3d at 590.  The Fifth Circuit has previously held a district court did not abuse its discretion in denying the plaintiffs leave to amend where, as here, the plaintiffs: (1) did not amend their complaint as a matter of right, (2) submitted a general curative request to amend their complaint in their response to the motion to dismiss, (3) did not submit a proposed amended complaint to the court, and (4) failed to provide "some specificity" to the court and defendant of the substance of their proposed amendment.  *McKinney*, 309 F.3d at 315.  For those same reasons, the Court denies Relator's request to amend its Complaint.  *See id.*; *see also Goldstein*, 340 F.3d at 254-55 (affirming denial of motion for leave to amend where plaintiffs stated only that "Should this Court find that the Complaint is insufficient in any way, however, plaintiffs respectfully request leave to amend.").

ORDER – PAGE 34

In the alternative, the Court would nevertheless deny Relator's motion for leave to amend because it would be futile.  Even if a party provides sufficient specificity and notice of the proposed amendments, the Court may still deny leave to amend for "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Thomas*, 832 F.3d at 591 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  If futility is the basis for denying leave to amend, "'the court is usually denying leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint.'"  *Thomas*, 832 F.3d at 591 (quoting *Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)).

As explained in depth in the Court's analysis, Relator has not asserted any basis for Defendant's liability under the statues, regulations, and/or leases Relator cites, and most importantly, the Court concludes those defects cannot be cured.  In its response and sur-reply to the motion to dismiss and its response to the Government's SOI, Relator failed to identify specific supporting facts that would in any way allow the Court to reasonably infer that Defendant is liable for any of the alleged misconduct. Also in its response and sur-reply, Relator requests the Court allow discovery as to the

ORDER – PAGE 35

federal leases, Defendant's reporting regarding helium, and "other relevant factual discovery" before the Court dismisses the case—essentially, "discovery to develop the necessary facts to properly plead its claim." *Skidmore Energy*, 2004 WL 3019097, at *12 n.6 ("The Court will not allow the Plaintiffs to conduct a 'fishing expedition' in an effort to manufacture their claims."). The Court concludes any amendment to the Complaint would be futile. *See id.* at *12.

Accordingly, for the all foregoing reasons, the Court **denies** Relator's alternative motion for leave to amend its Complaint.

## V.     Conclusion

The Court **grants** Defendant's motion to dismiss. Taking the well-pleaded facts as true, Relator did not plead sufficient facts to allow the Court to reasonably infer that Defendant owed any obligation or duty to the Government pursuant to federal statutes, regulations, and/or leases, nor that Defendant is liable for violating those federal statutes, regulations, and/or leases. Because Relator's FCA claim is premised on these alleged underlying statutory, regulatory, and contractual obligations and violations, Relator has not shown that it is entitled to relief on its FCA claim. *See Iqbal*, 556 U.S. at 679.

Furthermore, the Court **denies** Relator's request to amend its Complaint. Therefore, the Court hereby **dismisses** Relator's FCA claim.  All other relief not expressly addressed is hereby denied.

**SO ORDERED.**

Signed September 30th, 2020.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

ORDER – PAGE 37